IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHNNY GANT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:12-cv-581 |
| ) | |
| WALMART, FAYE DOE, DUSTIN DOE, ) | Judge Sharp |
| and JOHN DOE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Having granted the plaintiff's application to proceed as a pauper, the Court must conduct an initial review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir.1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007)). In reviewing the complaint, the Court must construe the *pro se* plaintiff's complaint liberally, *Boag v. McDougall*, 454 U.S. 364, 365 (1982), and accept the plaintiff's allegations as true unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). For the reasons set forth herein, the Court finds that the complaint is subject to dismissal for lack of jurisdiction.

**A.**     **Factual Allegations**

The plaintiff purports to assert claims for gross negligence, slander, harassment, defamation, unlawful restraint, kidnapping, and "racial profiling." The plaintiff alleges that he went to Walmart to "load money on a Western Union card" and then decided to do some grocery shopping. (ECF No. 1, at 2.) While he was shopping, one store employee ("Faye Doe") yelled from the end of the aisle he was on to another employee ("Dustin Doe") that she had "another one." (*Id.*) The plaintiff claims he went to the self-checkout lane and noticed that people were staring at him, and then realized that Dustin Doe was at the end of the self-check aisle watching him and talking on the phone. The plaintiff then understood Faye Doe's statement that she had "another one" to mean that she had another shop-lifting suspect, and that plaintiff himself was the suspect.

At that point, the plaintiff took his purchases to the Customer Service desk. He tried to leave but was detained by a third employee, John Doe, while Dustin Doe was on the telephone. The plaintiff believes Dustin Doe was on the telephone with the police. The plaintiff alleges that the police dispatcher asked if the Walmart employees had actually seen the plaintiff shoplifting. John Doe responded that they had not. As a result, the dispatcher did not send a police officer and John Doe released the plaintiff.

The plaintiff also claims that on another occasion while he was at the meat counter of a different grocery store, which he does not identify, three employees came out of the office. One asked if he could help the plaintiff; another "stood watching as if she were on a phone," and the third employee "secretly watch[ed]" the plaintiff. The plaintiff alleges that on yet another occasion when he was in the Dollar Store, an announcement was made over the loudspeaker that shoplifters would be prosecuted. The plaintiff alleges that other coincidental events have occurred, but he does not describe them.

The plaintiff seeks one hundred million dollars in damages for "character assassination." (ECF No. 1, at 5.)

**B.      Analysis**

Although the plaintiff cites various federal statutes and case law pertaining to negligence claims brought against the United States, the facts he has alleged do not appear to state a claim "arising under the Constitution, laws, or treaties of the United States" over which this Court would have original jurisdiction under 28 U.S.C. § 1331. Claims of negligence, gross negligence, defamation, slander, and kidnapping are all claims that arise under state law. The plaintiff also asserts a claim of "racial profiling." While federal law does prohibit discrimination on the basis of race in public accommodations, the plaintiff has not alleged facts that suggest he was subjected to discrimination in violation of 42 U.S.C. § 1981.

Section 1981 prohibits discrimination in the making and enforcement of contracts. Although much of the litigation involving § 1981 arises from the right to make and enforce employment contracts, the statute is not limited to employment matters. *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 304 (1994) "[Section 1981] is not limited to employment, because it covers all contracts."). The Sixth Circuit has applied the statute in the context of alleged discrimination by a retail establishment, and has adopted a three-part *prima facie* test for evaluating § 1981 claims in this context, pursuant to which a plaintiff seeking to prove a violation of that statute must prove that:

> (1) plaintiff is a member of a protected class;
>
> (2) plaintiff sought to make or enforce a contract for services ordinarily provided by the defendant; and
>
> (3) plaintiff was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

*Christian v. Wal-Mart Stores*, 252 F.3d 862, 872 (6th Cir. 2001).

In the present case, beyond the passing reference to "racial profiling" in the first paragraph of his complaint, the plaintiff has not alleged any facts from which the Court might conclude that the plaintiff meets the first requirement of a § 1981 claim—that is, that he is a member of a protected class. More specifically, although he alleges "racial profiling," he has not identified his race in the complaint. Even construing the complaint very liberally, the Court cannot simply presume, for example, that the plaintiff is African American and therefore a member of a protected class. Consequently, the plaintiff has failed to state a claim for violation of 42 U.S.C. § 1981.

The Court cannot discern any other possible federal claim stemming from the plaintiff's allegations. The plaintiff does not expressly seek to invoke the diversity jurisdiction of the Court, and in any event the allegations in the complaint do not establish the existence of diversity jurisdiction. A district court has jurisdiction over a suit between citizens of different states when the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs" and is between "citizens of different states." 28 U.S.C. § 1332(a). The Supreme Court has long interpreted this provision to require that the plaintiff's citizenship be "diverse from the citizenship of each defendant" thereby ensuring "complete diversity." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 & n.3 (1996) (citing *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 531 (1967)). In other words, for complete diversity to exist the plaintiff must be a citizen of a different state than each of the defendants. *Napletana v. Hillsdale Coll.*, 385 F.2d 871, 872 (6th Cir. 1967). The general rule is that diversity is determined at the time of the filing of a lawsuit. *Id.*; *Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 540 (6th Cir. 2006). In the absence of complete diversity, the Court lacks subject-matter jurisdiction over the state-law claims. *Caterpillar*, 519 U.S. at 68.

Complete diversity of citizenship appears to be lacking in this case. The complaint alleges that the plaintiff is a citizen of Tennessee. The citizenship of the three "Doe" defendants is not stated, but all are alleged to work at the Walmart located on Gallatin Road in Nashville, Tennessee and therefore may be presumed to be citizens of Tennessee. In the absence of allegations showing complete diversity of citizenship, this Court lacks subject-matter jurisdiction of the remaining state-law claims.

**C.    The *McGore* Effect**

28 U.S.C. § 1915(e)(2) provides that in actions filed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). The Sixth Circuit has held that the screening provisions of § 1915(e)(2) apply to both prisoner and non-prisoner actions, and that all *in forma pauperis* complaints must be dismissed, even before opportunity is given to amend, if they fall within the requirements of § 1915(e)(2) when filed. *McGore v. Wrigglesworth*, 114 F.3d 601, 608–09 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007)). *See also Horrigan v. Haworth*, No. 10-cv-462, 2010 WL 2490673 at * 2 (W.D. Mich. June 16, 2010) (citing *McGore*, recognizing that § 1915(e)(2) applies to prisoner and non-prisoner cases and requires a district court to dismiss a complaint, without granting leave to amend, where the complaint falls within one of the requirements of § 1915(e)(2) (B)).

Every other Circuit Court of Appeals to consider the question has rejected *McGore*'s interpretation of § 1915 as requiring *sua sponte* dismissal of a complaint without first permitting the plaintiff to amend. *See Brown v. Johnson,* 387 F.3d 1344, 1348–49 (11th Cir. 2004) (noting that "[o]nly the Sixth Circuit has held . . . that, '[u]nder the Prison Litigation Reform Act, courts have no discretion in permitting a plaintiff to amend a complaint to avoid a *sua sponte* dismissal'" (quoting *McGore*, 114 F.3d at 612)); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002) (concurring with "the great majority" of Circuit Courts of Appeals in continuing to hold, under 28 U.S.C.§ 1915(e)(2), that *pro se* plaintiffs "whose complaints fail to state a cause of action are entitled to amend their complaint unless doing so would be inequitable or futile"); *Razzoli v. Fed. Bureau of Prisons*, 230 F.3d 371, 377 (D.C. Cir. 2000) (holding that nothing in the PLRA "has altered our long-standing rule that a *sua sponte* dismissal for failure to state a claim without leave to amend is reversible error unless the claimant cannot possibly win relief" (citation and internal quotation marks omitted)); *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803,

806 (10th Cir.1999) (holding that dismissal of *pro se* prisoner's complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend, and noting that the amended language of the PLRA "parallels that of Federal Rule of Civil Procedure 12(b)(6)"); *Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999) (vacating the *sua sponte* dismissal of a claim by the district court because the plaintiff proceeding *in forma pauperis* was denied an opportunity to amend his complaint).

The plaintiff here has failed to state a colorable claim under federal law; the Court therefore lacks jurisdiction over the remaining non-diverse state-law claims. Consequently, the complaint is subject to dismissal for failure to state a claim upon which relief may be granted. Pursuant to *McGore*, the Court is required to dismiss the complaint without granting leave to amend. The Court will, however, dismiss the complaint without prejudice to the plaintiff's ability to refile the action asserting additional facts in support of his claims.

An appropriate order will enter.

*/s/ Kevin H. Sharp*
Kevin H. Sharp
United States District Judge